RECORD NOS. 14-1081(L); 14-1125 XAP

In The

# United States Court Of Appeals
### For The Fourth Circuit

**KENNETH L. HUNTER; RICK A. DONATHAN; JERRY D. MEDLIN,**

*Plaintiffs – Appellees/Cross-Appellants,*

v.

**TOWN OF MOCKSVILLE, NORTH CAROLINA;**
**ROBERT W. COOK, in his official capacity as Administrative Chief of Police of the**
**Mocksville Police Department and in his individual capacity;**
**CHRISTINE W. BRALLEY, in her official capacity as Town Manager of the**
**Town of Mocksville and in her individual capacity,**

*Defendants – Appellants/Cross-Appellees,*

------------------------------------------------

**NATIONAL ASSOCIATION OF POLICE ORGANIZATIONS,**

*Amicus Supporting Appellees/Cross-Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**AT GREENSBORO**

_____

**RESPONSE AND REPLY BRIEF OF**
**APPELLANTS/CROSS-APPELLEES**

_____

**Jaye E. Bingham-Hinch**
CRANFILL, SUMNER
 & HARTZOG, LLP
**5420 Wade Park Boulevard**
**P.O. Box 27808**
**Raleigh, NC  27611**
**(919) 828-5100**

*Counsel for Appellants/*
 *Cross-Appellees*

**Patrick H. Flanagan**
CRANFILL, SUMNER
 & HARTZOG, LLP
**P.O. Box 30787**
**Charlotte, NC  28230**
**(704) 940-3419**

*Counsel for Appellants/*
 *Cross-Appellees*

**Philip M. Van Hoy**
**Stephen J. Dunn**
VAN HOY, REUTLINGER,
 ADAMS & DUNN
**737 East Boulevard**
**Charlotte, NC  28203**
**(704) 375-6022**

*Counsel for Appellants/*
 *Cross-Appellees*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JUSRISDICTION ...........................................................2

STATEMENT OF THE ISSUES ...........................................................2

STATEMENT OF THE CASE AND FACTS ...........................................2

SUMMARY OF THE ARGUMENT ......................................................2

ARGUMENT ON REPLY ...................................................................3

    A.    Plaintiffs' Speech Was Unprotected Under Garcetti v. Ceballos
    As A Matter of Law Because They Spoke as Employees, Not as
    Citizens ...............................................................................3

        1.    Plaintiffs' speech is unprotected because they spoke as
        police officers in contacting the Governor's Office to
        request a criminal investigation.  It does not matter that
        their speech was not "about personnel issues." ........................3

        2.    Plaintiffs acted and spoke as police officers in contacting
        a state agency to request a criminal investigation .....................6

        3.    Lane v. Franks Supports Defendants' Argument for
        Dismissal ..................................................................11

    B.    The Individual Defendants Are Entitled to Qualified Immunity ........13

        1.    The procedural history of this case illustrates plaintiffs'
        rights were not clearly established.............................................14

        2.    Recently decided cases support the individual
        defendants' entitlement to qualified immunity .........................16

RESPONSE TO PLAINTIFFS' CROSS-APPEAL ................................................18

      A.    Judge Eagles did not err by allowing defendants' Motion for Summary Judgment as to plaintiffs' 42 U.S.C. § 1983 claim against the Town of Mocksville ........................................................18

CONCLUSION ........................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Andrew v. Clark,*
    561 F.3d 261 (4th Cir. 2009) ...................................................................6, 15

*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074 (2011)...................................................................17

*Brammer-Hoelter v. Twin Peaks Charter Academy,*
    492 F.3d 1192 (10th Cir. 2007) ...................................................13

*Chaklos v. Stevens,*
    560 F.3d 705 (7th Cir. 2009) ..........................................................3

*City of Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985)...................................................................19

*City of St. Louis v. Praprotnik,*
    485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) ..............19, 20, 21, 22

*Crowley v. Prince George's County,*
    890 F.2d 683 (4th Cir. 1989) ..........................................................18, 20, 21

*Durham v. Jones,*
    737 F. 3d 291 (4th Cir. 2013) ..........................................................6, 14, 15

*Garcetti v. Ceballos*,
    547 U.S. 410, 164 L. Ed. 2d 689, 126 S. Ct. 1951 (2006) ...................*passim*

*Greensboro Prof. Fire Fighters Ass'n v. City of Greensboro,*
    64 F.3d 962 (4th Cir. 1995) ..........................................................18, 19, 21, 23

*Iglesias v. Wolford,*
    667 F. Supp. 2d 573 (E.D.N.C. 2009) ..........................................................23

*Lane v. Franks et al.,*
    No. 13-483, 2014 U.S. LEXIS 4302 (June 19, 2014) ......................11, 12, 16

*Love-Lane v. Martin,*
    355 F.3d 766 (2004) ....................................................................................23

*Monell v. New York Dep't of Soc. Servs.,*
    436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) .....................2, 18, 22

*Morales v. Jones,*
    494 F.3d 590 (7th Cir. 2007) .........................................................................4

*Occupy Columbia v. Haley,*
    738 F.3d 107 (4th Cir. 2013) .......................................................................17

*Pembaur v. Cincinnati,*
    475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) .................18, 20, 21

*Riddick v. School Bd. of Portsmouth*,
    238 F.3d 518 (4th Cir. 2000) .......................................................................21

*Semple v. City of Moundsville,*
    195 F.3d 708 (4th Cir. 1999) .......................................................................19

*Smith v. Gilchrist*,
    749 F.3d 302 (4th Cir. 2014) .......................................................................17

*Spell v. McDaniel*,
    824 F.2d 1380 (4th Cir. 1987) .....................................................................19

*State v. Petersilie*,
    334 N.C. 169, 432 S.E.2d 832 (1993) .........................................................11

*Wilson v. Kittoe*,
    337 F.3d 392 (4th Cir. 2003) .......................................................................15

**Statutes:**

42 U.S.C. § 1983 ................................................................................*passim*

N.C. Gen. Stat. § 14-56 ..................................................................8

N.C. Gen. Stat. § 14-90 *et seq* ....................................................8

N.C. Gen. Stat. § 14-277(d1)(4) ...................................................8

N.C. Gen. Stat. § 15A-304(d)(3) ...................................................9

N.C. Gen. Stat. § 20-138.1 ............................................................8

N.C. Gen. Stat. § 160A-164 ......................................................20, 23

**Rules:**

Fed. R. App. P. 28 ...........................................................................1

Fed. R. Civ. P. 30(b)(6) ................................................................12

NOS.:  14-1081 (L); 14-1125 XAP
IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

(1:12-CV-00333-CCE-JEP)

KENNETH L. HUNTER, RICK A.        )
DONATHAN, and JERRY D. MEDLIN,    )
                                  )
         Plaintiffs – Appellees/  )
         Cross-Appellants,        )
              v.                  )
                                  )
TOWN OF MOCKSVILLE, NORTH         )
CAROLINA; ROBERT W. COOK, in his  )
official capacity as Administrative Chief of  )
the Mocksville Police Department and in his )
individual capacity; CHRISTINE W. )
BRALLEY, in her official capacity as Town )
Manager of the Town of Mocksville and in  )
her individual capacity,          )
                                  )
         Defendants – Appellants  )
         Cross-Appellees.         )
_____)

## RESPONSE AND REPLY BRIEF OF APPELLANTS/CROSS-APPELLEES

Pursuant to Rule 28 of the Federal Rules of Appellate Procedure for the Fourth Circuit, Appellants/Cross-Appellees (hereinafter "Defendants") submit the following Reply to plaintiff's Answering Brief concerning defendants' appeal. Defendants also submit the following Answering Brief/Response to plaintiffs' cross-appeal.

1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JUSRISDICTION

Defendants incorporate the Statement of Subject Matter and Appellate Jurisdiction from their Opening Brief.

## STATEMENT OF THE ISSUES

Defendants incorporate the Statement of the Issues from their Opening Brief, but note the following issue which is addressed in plaintiffs' cross appeal:

1.    Whether the trial court erred by granting defendants' Motion for Summary Judgment as to plaintiffs' 42 U.S.C. § 1983 claim against the Town of Mocksville.

## STATEMENT OF THE CASE AND FACTS

Defendants incorporate the Statement of the Case and Facts from their Opening Brief.

## SUMMARY OF THE ARGUMENT

Defendants incorporate the Summary of Argument set forth in their Opening Brief in support of defendants' appeal. In addition, plaintiffs' contention that the Town of Mocksville should be liable for the alleged violations of plaintiffs' constitutional rights is misguided because the alleged violations were not the result of a policy or custom of the Town as required by *Monell v. New York Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and long standing precedent in this Circuit.   North Carolina vests city council with the

2

authority to make personnel policies and there is no evidence of record that the Town of Mocksville had an official policy that violated the plaintiffs First Amendment rights, nor is there any evidence that the Town had a custom of violating such rights.

## **ARGUMENT ON REPLY**

In support of defendants' appeal, defendants incorporate the arguments from their Opening Brief and reply, further, as follows:

**A.   Plaintiffs' Speech Was Unprotected Under *Garcetti v. Ceballos* As A Matter of Law Because They Spoke as Employees, Not as Citizens**

> ***1.   Plaintiffs' speech is unprotected because they spoke as police officers in contacting the Governor's Office to request a criminal investigation. It does not matter that their speech was not "about personnel issues."***

Plaintiffs fundamentally misapprehend the holding of *Garcetti v. Ceballos*, 547 U.S. 410, 164 L. Ed. 2d 689, 126 S. Ct. 1951 (2006), suggesting repeatedly throughout their brief that they necessarily spoke as citizens, not employees, since their speech was not "about personnel issues" or "their own interests as employees." (*See*, Brief of Appellees/Cross-Appellants, pp. 23, 25, 31, 42). That question, however, concerns whether Plaintiffs spoke on a matter of public concern. Before even reaching that question, a court must first address the threshold issue of whether a public employee spoke as a citizen or as an employee. *Chaklos v. Stevens,* 560 F.3d 705 (7th Cir. 2009), s*ee also*, Brief of

Defendant/Appellants, p. 24 (citing cases describing the citizen/employee issue as a threshold issue).

Speech undoubtedly can address matters of public concern yet still be unprotected under *Garcetti*. The relevant inquiry is whether the speech was made "pursuant to" a public employee's duties. *Garcetti,* 547 U.S. at 421. The speech in *Garcetti* itself had nothing to do with "personnel issues," rather; it consisted of memoranda of a deputy district attorney in Los Angeles objecting to "serious misrepresentations" in an affidavit used in obtaining a search warrant. *Id.,* at 413.

Similarly, in *Morales v. Jones,* 494 F.3d 590 (7th Cir. 2007), a police officer's report to an assistant district attorney that the Chief and Deputy Chief had harbored a felon was held to be unprotected because it was the officer's job to report crimes. The officer's speech was unprotected not because it concerned "personnel issues," (it did not) but because it was made pursuant to the officer's employment.

The holding of *Garcetti* does not even mention the distinction between matters of private and public concern. It states, "We hold that when public employees make statements pursuant to their official duties, ***the employees are not speaking as citizens*** for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Garcetti,* 547 U.S. at 421 (emphasis added). This is true despite the Court's acknowledgment that Ceballos'

speech was on matters of public concern. "Exposing governmental inefficiency and misconduct is a matter of considerable significance," the Court noted while still holding his speech was unprotected. *Id.,* at 425.

The lack of Constitutional protection for Ceballos' speech was no indication it was unimportant or merely of private concern. Even without the protection of the First Amendment, the Court observed, public employees have other recourse. As a matter of good judgment, the Court suggested, public employers should be receptive to constructive criticism. Moreover, "The dictates of sound judgment are reinforced by the powerful network of legislative enactments—such as whistle-blower protection laws and labor codes—available to those who seek to expose wrongdoing." *Id.*

Plaintiffs' suggestion that by speaking on matters of public concern they necessarily spoke at citizens is simply wrong. Plaintiffs' speech in this case is unprotected because they identified themselves and acted as sworn officers of the Mocksville Police Department in contacting the Governor's Office to request a criminal investigation. Police officers have a unique responsibility, unlike other private citizens, to report and investigate crimes. In contacting the Governor's Office to request a criminal investigation, the plaintiffs used their training, experience, and discretion as police officers in performing the unique duty of

police officers.  Therefore, under *Garcetti*, as a matter of law, their speech was unprotected and their First Amendment claims must be dismissed.

### 2. *Plaintiffs acted and spoke as police officers in contacting a state agency to request a criminal investigation*

Plaintiffs accuse defendants of asserting the position that "*any* report by *any* officer bearing on *any* misconduct by *any* fellow or superior officers, or apparently anyone else in authority, constitutes unprotected speech." (*See*, Brief of Appellees/Cross-Appellants, p. 30, emphasis in original).  This is an absurd exaggeration.  Under *Garcetti*, plaintiffs' speech is unprotected simply because it was made pursuant to their duty as sworn police officers to report and investigate crimes.

Plaintiffs rely heavily on two cases in which officers' reports of misconduct were found to be protected: *Andrew v. Clark,* 561 F.3d 261 (4th Cir. 2009) and *Durham v. Jones,* 737 F. 3d 291 (4th Cir. 2013).  Given these precedents, defendants of course do not contend officers' reports of misconduct can *never* be protected.  Different facts compel different results.

As noted in the defendants' primary brief, both *Andrew* and *Durham* involved speech directed to media organizations for the purpose of generating publicity.  If the plaintiffs had done the same, *Garcetti* arguably would not apply since such media contacts are clearly outside the scope of police officers' ordinary duties.  Neither *Andrew* nor *Durham* touches squarely on the questions presented

by this case, where officers spoke exclusively to a state agency expressly for the purpose of initiating a criminal investigation.[1]

Here, even considering the evidence in the light most favorable to the plaintiffs, in calling the Governor's Office, they spoke pursuant to their official duties as police officers.  Hunter and Donathan testified that they "decided to seek an investigation by state officials concerning the corruption of the MPD."  JA 137, 162 (Hunter Dec., ¶ 30, Donathan Dec. ¶ 32).  The plaintiffs called the North Carolina Attorney General's Office seeking "an investigation."  JA 138, 162, 187 (Hunter Dec. ¶ 35, Donathan Dec. ¶ 35, Medlin Dec. ¶ 32).  They were referred to the local authorities, but decided not to contact the local authorities because of the plaintiffs' perception that those authorities had close relationship with Chief Cook. JA 138, 162, 187 (Hunter Dec. ¶ 36, Donathan Dec. ¶ 35, Medlin Dec. ¶ 32).

Donathan then suggested calling the Governor's Office "to request an investigation."  JA 163 (Donathan Dec. ¶ 36).  Indeed, the Governor's Office is expressly authorized to direct the State Bureau of Investigation to commence such an investigation.  *See*, 12 NCAC 03B.0104(d) (*The SBI shall have charge of the investigation of crimes and criminal procedure as the Governor or Attorney General may direct*).

---

[1]  Plaintiffs persist in mentioning that they also met with the NAACP notwithstanding there is no evidence, not even any allegation, that this meeting had anything whatsoever to do with the termination of their employment.

All three plaintiffs testified they reported to the Governor's Office the following crimes:

- Unauthorized stopping of motorists with blue lights (a felony under N.C.G.S. § 14-277(d1)(4));
- Embezzlement (a felony under N.C.G.S. § 14-90 *et seq.*);
- Driving under the influence of alcohol (a misdemeanor under N.C.G.S. § 20-138.1);
- Breaking and entering into a car (a felony under N.C.G.S. § 14-56).

JA 138-9, 163, 188 (Hunter Dec. ¶ 37, Donathan Dec. ¶ 37, Medlin Dec. ¶ 33). According to Medlin, "We ***obviously intended***, and assumed, that we would be having an in-depth interview with some ***law enforcement official from the Governor's office*** or some other state agency."   JA 188 (Medlin Dec. ¶ 33) (emphasis added).[2]

Vickie Jones, the employee of the Governor's Office who took the plaintiffs' call, made handwritten notes indicating they were "attempting to take out arrest warrants."   JA 216 (Jones Dec. Attachment A).   In her typewritten notes, Jones indicated, "If our office cannot help, the officers plan to take out warrants on the chief."   JA 219 (Jones Dec. Attachment B).

---

[2]  Curiously, given the authority of the Governor's Office to direct an SBI investigation and the plaintiffs' express intention to request a criminal investigation, plaintiffs suggest they only contacted the Governor's Office on a "whim."   *See*, Brief of Appellees/Cross-Appellants, p. 29.  Plaintiffs misleadingly assert the Governor's Office "had never received such reports in the past," citing the Declaration of Vickie Jones.  What Ms. Jones actually said, however, was that the call from the plaintiffs was the only one *she personally* received as an employee of the Governor's Office.  JA 213, Jones Dec. ¶ 12.

The only allegation plaintiffs claim to have reported to the Governor's Office that is *not* a crime consists of unspecified "racially discriminatory practices." JA 138-9, 163, 188 (Hunter Dec. ¶ 37, Donathan Dec. ¶ 37, Medlin Dec. ¶ 33). Jones' notes, however, reflect no mention of race discrimination. JA 216, 219 (Jones Dec. Attachments A and B).

It is beyond dispute that the plaintiffs' speech at issue in this case consisted of reporting crimes to a state agency authorized to initiate a criminal investigation. It was expressly the plaintiffs' intention to generate such an investigation, and if they were unsuccessful, to take out warrants on their own.

In this way, the plaintiffs' speech has no relevant analogue to speech by private citizens who are not police officers. Reporting crime to the appropriate agency for investigation is exactly what police officers are paid to do. This duty of sworn officers is not shared by private citizens.

The law recognizes in many ways the special role of sworn officers in the criminal justice system. As just one example, if the plaintiffs had followed through on their plan to "take out warrants on the chief" based on their allegations, as sworn officers they could show probable cause via audio and video transmission. N.C.G.S. ¶ 15A-304(d)(3). Private citizens do not have the same opportunity.

The unique duty of sworn police officers is critical in this case because it cuts to the heart of the theoretical underpinnings of the First Amendment jurisprudence culminating in *Garcetti*:

> Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government. The same goes for writing a letter to a local newspaper… or discussing politics with a co-worker… When a public employee speaks pursuant to employment responsibilities, however, there is no relevant analogue to speech by citizens who are not government employees.

> *Garcetti, supra,* at 423-4 (internal citations omitted).

Plaintiffs argue they spoke as citizens, not police officers, emphasizing that the MPD personnel manual does not explicitly direct officers to call the Governor's Office to report misconduct by the Chief. It does, however, mandate that officers cooperate with all law enforcement agencies, report violations of law by other officers, and, in appropriate circumstances, report a matter or refer a complaint to a more suitable agency. JA 3284-3361 (Matthews Dec. Ex. A).

Plaintiffs' own declarations on record are abundantly clear. They called the Governor's Office to report crimes and request an investigation. They were prepared to take out warrants on their own. This is what police officers do for a

10

living. Their speech was not protected under the First Amendment and their claims should have been dismissed.[3]

### 3.    *Lane v. Franks Supports Defendants' Argument for Dismissal*

The Supreme Court recently decided *Lane v. Franks et al.,* No. 13-483, 2014 U.S. LEXIS 4302 (June 19, 2014), holding that the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities.[4] Edward Lane, the director of a statewide program for underprivileged youth, was terminated after testifying in the corruption trial of an Alabama State Representative. Although it was decided on substantially different facts, *Lane* provides helpful guidance and supports the defendants' arguments in this appeal.

*Lane* confirms that whether the speech in question is speech as a citizen on a matter of public concern is the Court's "first inquiry." *Id.,* at 7. The Court addressed the inquiry in two parts, first deciding that Lane spoke as a citizen, and then, in a separate section, deciding his speech was on a matter of public concern.

---

[3] Plaintiffs suggest defendants have abandoned their appeal of the District Court's denial of summary judgment with respect to state law claims. *See,* Brief of Appellees/Cross-Appellants, p. 20 n. 11. However, North Carolina courts have adopted federal First Amendment jurisprudence. *See*, *State v. Petersilie*, 334 N.C. 169, 432 S.E.2d 832 (1993). The state claims should have been dismissed for the same reasons as the federal claims.

[4] The Court expressed no opinion on whether truthful sworn testimony would constitute citizen speech under *Garcetti* if the employee's ordinary job responsibilities included testifying in court.

The Defendants in *Lane* argued that Lane's speech was unprotected under *Garcetti* because he learned the subject matter of his testimony in the course of his public employment. The Court disagreed, noting that *all* citizens have a duty to provide truthful sworn testimony in judicial proceedings. The critical question under *Garcetti*, the Court reasoned, "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.,* at 8.

In a concurring opinion, Justice Thomas emphasized that under a straightforward application of *Garcetti*, Lane did not speak "pursuant to" his ordinary job duties because his responsibilities did not include testifying in court proceedings[.]" *Id.,* at 12. However, the result could be different in another context, for example:

> For some public employees—***such as police officers***, crime scene technicians, and laboratory analysts—testifying is a routine and critical part of their employment duties. Others may be called to testify in the context of particular litigation as the designated representatives of their employers. See Fed. Rule Civ. Proc. 30(b)(6). The Court properly leaves the constitutional questions raised by these scenarios for another day.

> *Id.,* at 13, emphasis added.

In this case, the plaintiffs' speech was unprotected because reporting crime to the appropriate agency for investigation is a routine and critical part of their employment duties. This is true even though Mocksville police officers rarely

have occasion to contact the Governor's Office specifically for this purpose. *See, Brammer-Hoelter v. Twin Peaks Charter Academy,* 492 F.3d 1192, 1203 (10th Cir. 2007) (*speech relating to tasks within an employee's responsibilities may be unprotected "even though the speech concerns an unusual aspect of the employee's job that is not part of his everyday functions"*).

The plaintiffs' effort in this case to deny their duty as police officers is contradicted not only by the undisputed evidence on record, but also by common sense. By calling the Governor's Office to request an investigation of their allegations of criminal conduct, the plaintiffs were simply doing their jobs. Because their speech was made pursuant to their employment duties, it was unprotected under *Garcetti* as a matter of law. Accordingly, their First Amendment claims and related state law claims should have been dismissed.

**B.     The Individual Defendants Are Entitled to Qualified Immunity**

As shown herein, because the plaintiffs' speech was unprotected under *Garcetti*, there has been no deprivation of their constitutional rights at all. At a minimum, given the unsettled state of the law and lack of clear precedent in this Circuit, it cannot be said that plaintiffs' rights were "clearly established" at the time of their discharge. Recent judicial decisions and the procedural history of this case itself show that, at worst, the individual defendants made a mistaken judgment in a legal gray area. They are entitled to qualified immunity.

13

1. ***The procedural history of this case illustrates plaintiffs' rights were not clearly established.***

In the district court's summary judgment order dated October 21, 2013, Judge Eagles noted that analogous cases were "ambiguous," and stated, "This ambiguity in authorities precludes finding that the plaintiffs' rights were clearly established. Therefore, Chief Cook and Town Manager Bralley are entitled to qualified immunity, and plaintiffs' § 1983 claims against them are dismissed." JA 3384-3385.

On December 10, 2013, the Fourth Circuit issued its decision in *Durham v. Jones,* 737 F.3d 291, 303-04 (4th Cir. 2013), holding that "it was clearly established in the law of this Circuit in September 2009 that an employee's speech about serious governmental misconduct, and certainly not least of all serious misconduct in a law enforcement agency, is protected." On the basis of this ruling, Judge Eagles granted plaintiffs' second motion for reconsideration, and, by order dated January 22, 2014, revised her summary judgment order to deny qualified immunity. The district court opinion stated, "There are now two reported Fourth Circuit cases that weigh in favor of the plaintiffs' position and none that weigh in favor of immunity for Chief Cook and Ms. Bralley." JA 3396.

The district court erred in revising its original order. First, *Jones* did not analyze or even cite *Garcetti.* The issue in *Jones* was whether speech about "serious misconduct in a law enforcement agency" addressed a matter of public

14

concern. This much was already clearly established, and was even addressed in *Garcetti* itself where the Court stated, "Exposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti, supra*, at 425. *Jones* simply does not address the *Garcetti* issue that is central in this case— whether the plaintiff spoke as a citizen or an employee. For this reason, its holding represented no change in the law.

Both *Jones* and *Andrew v. Clark*, 561 F.3d 261 (4th Cir. 2009) involved police officers who took their concerns to the media in order to generate publicity. In this case, by contrast, the plaintiffs took their concerns to a state agency for the purpose of initiating a criminal investigation. Neither *Jones* nor *Andrew* analyzes whether, as a matter of law, this is part of the ordinary duties of sworn police officers. There is no controlling authority on this issue in the Fourth Circuit.

More to the point, if the right in question is so undefined that the district court issued conflicting rulings in this very case, it cannot be so clearly established that Chief Cook and Town Manager Bralley should be subject to individual liability. In *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003) this Court stated, "If judges disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy."

Leaving aside the numerous cases from other circuits cited by defendants in their primary brief, in this case Judge Eagles disagreed with *herself* as to whether

15

plaintiffs' alleged First Amendment right was clearly established as of the date of their discharge in December 2011. The district court's conflicting rulings confirm the plaintiffs' alleged First Amendment right is very much unsettled. Municipal officers, of a town so small it has no human resources department, cannot be expected to have prescience exceeding that of a federal judge. The individual defendants are entitled to qualified immunity.

### 2. Recently decided cases support the individual defendants' entitlement to qualified immunity.

Recently decided cases in the Supreme Court and the Fourth Circuit support the individual defendants' argument for application of qualified immunity. In *Lane v. Franks et al.,* No. 13-483, 2014 U.S. LEXIS 4302 (June 19, 2014), the Supreme Court emphasized that qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Id.,* at 10. The Court analyzes conflicting precedent from the Eleventh Circuit and other circuits, ultimately concluding that the individual defendants were entitled to qualified immunity because the question was not "beyond debate" at the time he acted.

Similarly, as of December 2011 there was no clear guidance in this Circuit that police officers are protected by the First Amendment when they report crimes to state agencies for the purpose of requesting criminal investigation. This alleged right is still not clearly established today.

16

In a recent Fourth Circuit case on qualified immunity, *Smith v. Gilchrist*, 749 F.3d 302 (4th Cir. 2014), this Court held it was clearly established that "it is the right of an assistant district attorney running for public office not to be fired for speaking publicly in his capacity as a candidate on matters of public concern when the speech is critical of a program that substantially reduces the DA's office's caseload but there is no reason to believe the speech will negatively impact the DA's office's efficiency." *Id.,* at 312. Although factually quite distinct from this case, *Smith* is consistent with controlling precedent in emphasizing that where the law is unsettled, qualified immunity protects public officials from reasonable but mistaken judgments.

"In gray areas, where the law is unsettled or murky, qualified immunity affords protection to a government official who takes an action that is not clearly forbidden—even if the action is later deemed wrongful." *Id.,* at 307, *quoting, Occupy Columbia v. Haley,* 738 F.3d 107, 118 (4th Cir. 2013). In order for the law to be clearly established, existing precedent "must have placed the statutory or constitutional question beyond debate." *Smith, supra,* at 307-08, *quoting, Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2083 (2011).

The question in this case is whether the plaintiffs spoke as citizens or police officers when they called the Governor's Office to report crimes and request a criminal investigation. There was no clear precedent on this question in December

2011 and there is no clear precedent today. Accordingly, the individual defendants are entitled to qualified immunity and the claims against them should have been dismissed.

## RESPONSE TO PLAINTIFFS' CROSS-APPEAL

A.  **Judge Eagles did not err by allowing defendants' Motion for Summary Judgment as to plaintiffs' 42 U.S.C. § 1983 claim against the Town of Mocksville.**

Municipal liability may be imposed under 42 U.S.C. § 1983 only where the constitutional deprivation is the direct result of the municipality's official policy or custom; a municipality cannot be held liable solely on the basis of *respondeat superior. Greensboro Prof. Fire Fighters Ass'n v. City of Greensboro,* 64 F.3d 962, 964 (4th Cir. 1995) (citing *Monell v. New York Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); *Crowley v. Prince George's County,* 890 F.2d 683 (4th Cir. 1989). The employee must demonstrate that the alleged constitutional deprivation was caused by an official policy or custom of the municipality itself. *Crowley,* 890 F.2d at 685-87.

In this context, municipal "policy" refers to "formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). "Policy" is found in ordinances and regulations, as well as in *ad hoc* policy decisions of officials with

18

policymaking authority, and is generally understood to mean "'a course of action consciously chosen from among various alternatives' respecting basic government functions." *Spell v. McDaniel*, 824 F.2d 1380, 1385-86 (4th Cir. 1987) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).  This is in contrast to "episodic exercises of discretion in the operational details of government." *Semple v. City of Moundsville,* 195 F.3d 708, 712 (4th Cir. 1999).

In the context of a retaliatory discharge claim, the plaintiff is required to show that his termination was caused by an existing, unconstitutional policy of the municipality which disfavors municipal employees who exercise the same right. *Greensboro Fire Fighters*, 64 F.3d at 964-65.  Here, plaintiffs' Section 1983 claim fails because the record is devoid of *any* evidence that any policy or custom of the Town led to the alleged deprivation of the plaintiffs' constitutional rights.  There is no evidence that plaintiffs termination was caused by an existing, unconstitutional municipal policy of terminating officers under the circumstances of this case.

While it is true that an isolated personnel decision may support municipal liability, recovery from a municipality is limited to acts "which the municipality has officially sanctioned or ordered." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988).  Further, "the authority to make municipal policy is necessarily the authority to make final policy." *Praprotnik,* 485 U.S. at 127, 108 S. Ct. 915.  Identification of the municipality's final

policymaker must be made by reference to state or local law. *Praprotnik*, 485 U.S. at 131, 108 S. Ct. 915; *Crowley*, 890 F.2d at 685-86. Under North Carolina law, the city council is vested with the authority to set personnel policy. *See* N.C. Gen. Stat. § 160A-164.

Plaintiffs argue that Cook and Bralley had the authority to hire and fire and that the City Council had no involvement in these decisions. They argue that Bralley was the final decisionmaker with respect to the employment of the plaintiffs and that Cook was the final policymaker for the police department, and therefore the Town of Mocksville is liable for their decisions. Plaintiffs' argument fails as a matter of law.

Even if a police chief has been delegated the authority to make personnel decisions within a department, this does not vest the chief with policymaking authority for the municipality. *Crowley,* 890 F.2d at 686. For example:

> [T]he County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. *Pembaur*, 475 U.S. at 483, n. 12, 106 S. Ct. 1300, n. 12.

20

As noted in *Crowley,* "To rule to the contrary would expose a municipality to potential liability for every personnel decision. *Crowley,* 890 F.2d at 687.

The *Crowley* court, quoting from *Pembaur*, provided an excellent discussion of this concept in a situation similar to the case at bar. The *Crowley* court held that there is a distinction between the discretionary authority to make final <u>decisions</u> on a particular matter and the authority to make final municipal <u>policy</u> on that matter. *Crowley*, 890 F.2d at 685. More specifically, the *Crowley* panel held that the fact that a police chief had "final" discretion to hire and fire employees of his police department did <u>not</u> establish that he was a "final policymaker" with regard to municipal employment policy. *Crowley*, 890 F.2d at 685-87; *accord Greensboro Fire Fighters*, 64 F.3d at 966; *see also Riddick v. School Bd. of Portsmouth*, 238 F.3d 518, 522-24 (4th Cir. 2000) (holding that delegation of the authority to make discretionary personnel decisions is <u>not</u> the equivalent of delegating final policymaking authority).

Further, in *City of St. Louis v. Praprotnik,* the Court stated, "If city employment policy was set by the Mayor and Alderman and the Civil Service Commission, only those bodies' decisions would provide a basis for city liability. This would be true even if the Mayor and Alderman and the Commission left the appointing authorities discretion to hire and fire employees and they exercised that

discretion in an unconstitutional manner." *Praprotnik*, 485 U.S. at 129-30 (internal

quotation marks omitted). The Court went on the say

> It is not enough for the plaintiff to simply show that the final policymaker went along with the discretionary decision proposed by his subordinate, because that would effectively result in the imposition of liability under the doctrine of *respondent superior*. Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. . . .[T]he mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy.

*Praprotnik*, 485 U.S. at 130-31.

The rationale of these cases is simple: To expose a municipality to liability

under these circumstances would be to impose liability under *respondeat superior*

principles--which is strictly prohibited under *Monell* and its progeny. "Municipal

liability thus depends on whether the liability asserted is based on a municipal act

and not simply on the independent act of a municipal employee, even though that

employee may be acting as the final decision maker. When a final decision by an

employee implements municipal policy, then municipal liability may follow. But

if a final decision does not implement municipal policy, or is contrary to it, then it

is not imputable to the municipality." *Greensboro Fire Fighters*, 64 F.3d at 964-65.

Certainly there is no allegation in this case of an official Town policy to violate police officers' First Amendment rights. Plaintiffs' claims are based on Cook's and Bralley's decision to terminate their employment. However, it is undisputed that neither Cook nor Bralley had final policymaking authority on the Town's behalf.

"The court's identification of policymaking officials is a question of state law, not of fact . . . Under North Carolina law, the city council is vested with the authority to make personnel policies. *See* N.C. Gen. Stat. § 160A-164. Although the city council may... delegate the authority to implement individual personnel decisions, the ultimate authority to make personnel policy remains with the city council." *Iglesias v. Wolford,* 667 F. Supp. 2d 573, 589 (E.D.N.C. 2009). Plaintiffs' claims should be dismissed because there is no evidence of an official policy or custom, nor that the Town Council was "aware of any constitutional violation and either participated in or otherwise condoned it." *Love-Lane v. Martin,* 355 F.3d 766, 783 (2004).

## **CONCLUSION**

For the reasons set forth herein, defendants contend that they are entitled to summary judgment as the claims asserted against them. Defendants respectfully

request, therefore, that Judge Eagle' rulings be reversed as to her denial of defendants' Motion for Summary Judgment and that this action be dismissed in its entirety.  As to the claims at issue in plaintiffs' cross appeal, defendants request that Judge Eagle's ruling (wherein she allowed summary judgment as to defendant Town of Mocksville) be affirmed.

This 7th day of July, 2014.

CRANFILL SUMNER & HARTZOG LLP

BY:    /s/Patrick H. Flanagan
       PATRICK H. FLANAGAN, State Bar No. 17407
       Post Office Box 30787
       Charlotte, North Carolina 28230
       Telephone:   (704) 332-8300
       Facsimile:   (704) 332-9994
       E-Mail: phf@cshlaw.com

       *Attorneys for Defendants-Appellants*

VAN HOY, REUTLINGER, ADAMS & DUNN

BY:    /s/ Philip M. Van Hoy
       PHILIP M. VAN HOY, State Bar No. 5869
       /s/ Stephen J. Dunn
       STEPHEN J. DUNN, State Bar No. 25796
       737 East Boulevard
       Charlotte, NC 28203
       Telephone:  (704) 375-6022
       Facsimile:   (704) 375-6024
       Email:       phil.vanhoy@vradlaw.com
                    steve.dunn@vradlaw.com

       *Attorneys for Defendants-Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains <u>5,450</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.


CRANFILL SUMNER & HARTZOG LLP

BY:    <u>/s/Patrick H. Flanagan</u>
PATRICK H. FLANAGAN, State Bar No. 17407
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone:  (704) 332-8300
Facsimile:   (704) 332-9994
E-Mail: phf@cshlaw.com

*Attorneys for Defendants-Appellants/*
*Cross-Appellees*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 7th day of July, 2014, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send

notice of such filing to the following registered CM/ECF users:

> Robert M. Elliott
> Helen L. Parsonage
> Elliot Morgan Parsonage
> 426 Old Salem Road
> Brickenstein-Leinbach House
> Winston-Salem, NC 27101
> rmelliot@emplawfirm.com
> hparsonage@emplawfirm.com
>
> *Counsel for Plaintiffs-Appellees/Cross-Appellants*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> <u>/s/ Tracy Moore Stuckey</u>
> Tracy Moore Stuckey
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street
> Suite 230
> Richmond, VA 23219